IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALFRED R. KIDD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 01:06-1098 BLW MHW |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| V. BIGGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This prisoner civil rights case has been referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b)(1). (Docket No. 23.) Before the Court is Defendants' Motion to Dismiss Pursuant to Unenumerated Federal Rule of Civil Procedure 12(b), in which Defendants argue that Plaintiff failed to exhaust his administrative remedies.

Having reviewed the Motion, Response, and relevant portions of the record, the Court concludes that oral argument is unnecessary to resolve this matter. For the reasons that follow, the Court recommends that the Motion be denied.

## REPORT

### BACKGROUND

In his Complaint, Plaintiff alleges that he requested a transfer to a different cell at the Pleasant Valley State Prison ("PVSP") on August 26, 2004. That request was denied, and Sergeant Biggs ordered him to go back to his cell. Plaintiff contends that when he

**REPORT AND RECOMMENDATION - 1**

refused, he was dragged toward his cell by Defendant Oxborrow.  Plaintiff alleges that when he stood up, he was pushed, which caused him to fall.  Defendants Biggs, Oxborrow and Dhillon then picked him up, carried him to the day room, and dropped him on the floor.  Defendant Biggs allegedly slammed Plaintiff's head into the wall, and another officer began kicking him.

Plaintiff was eventually transferred to the Correctional Treatment Center, where he was left in a cell in handcuffs for over four hours.   He claims that at one point during this time, defendant Madrid intentionally squeezed his handcuffs tighter, causing him more pain.

On August 21, 2006, Plaintiff brought this action under 42 U.S.C. §1983, alleging excessive force and deliberate indifference to his serious medical needs, in violation of the Eighth and Fourteenth Amendments.  Magistrate Judge Dennis L. Beck reviewed the Complaint and concluded that Plaintiff had stated a claim for relief for excessive force against defendants Biggs, Oxborrow, Dhillon, and Madrid, but that he had failed to state any other claims against any other defendants.  Judge Beck gave Plaintiff an opportunity to file an amended complaint or to proceed on the excessive force claim. (Docket No. 10, p. 4.)  Plaintiff notified the Court that he intended to proceed only against defendants Biggs, Oxborrow, Dhillon, and Madrid for excessive force.  (Docket No. 11.)

Defendants have filed a pre-answer Motion to Dismiss on the ground that Plaintiff failed to exhaust his administrative remedies prior to initiating this lawsuit.  Plaintiff has responded, and the matter is now ripe for the Court's decision.

**REPORT AND RECOMMENDATION - 2**

## STANDARD OF LAW

Under the Prison Litigation Reform Act of 1995 (PLRA), an inmate is required to exhaust all available administrative remedies within the jail or prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). In *Jones*, the Supreme Court noted that the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Where there is an informal and relatively simple prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Id.* at 103. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 118.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated Rule 12(b) motion, and the court may resolve disputed issues of fact. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). Defendants bear the burden of proving a lack of exhaustion. *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).

**REPORT AND RECOMMENDATION - 3**

## DISCUSSION

Defendants argue that Plaintiff failed to exhaust administrative remedies because, while he submitted a grievance form within the prison, he did not appeal to the final level of review in a procedurally proper manner.

The Court finds that Defendants have failed to carry their burden because they have not shown that a remedy remained available to Plaintiff at the final level of review, given the nature of the complaint and the remedy provided at the intermediate level. The Court alternatively concludes that even if some form of relief remained theoretically open, Plaintiff actually submitted a timely appeal to the final level under California Department of Corrections and Rehabilitation ("CDCR") regulations, providing the CDCR with an opportunity to resolve the matter internally.

1. The California Prison Grievance Process

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." CAL. CODE REGS. Tit. 15, § 3084.1(a) (2008).

Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed under certain circumstances. *Id.*, at § 3084.5. To start the process, a prisoner completes a two-page "CDC Form 602, Inmate/Parolee Appeal Form" ("602 Form") describing "the problem and action requested." *Id.*, at § 3084.2(a). The 602 form contains a space for the response of the prison official at each level of review.

**REPORT AND RECOMMENDATION - 4**

A division head reviews appeals on the first formal level, and the warden or a designee reviews appeals on the second formal level.  *See id.*, § 3084.5(b)(3), (e)(1).  The regulations provide that the second formal level generally "shall be completed prior to the appellant filing at the third formal level," and the third level of review is "for review of appeals not resolved at second level with the exception provided in section 3084.7(d)(4)(B)[for involuntary transfers to a medical facility]".  *Id.*, § 3084.5(c),(d).  Completion of the third level, also known as the Director's Level, exhausts the remedy.  *Id.*, at § 3084.1(a).  A timely appeal must be submitted "within 15 working days of the event or decision being appeal, or of receiving an unacceptable lower level appeal decision."  *Id.*, at § 3084.6(c).

      2.     <u>Plaintiff's Attempt to Exhaust Administrative Remedies</u>

Plaintiff filled out a 602 form within a week of the incident in which he was allegedly beaten by defendants.  He requested that the officers "be fully prosecuted" and "reprimanded," and that he be "fully compensated for his pain and suffering."  (Motion to Dismiss, Exhibit A, p. 5.)  The appeals coordinator at PVSP logged the appeal as a "staff complaint" and sent it for a second level response, bypassing the first formal level.  (Motion to Dismiss, Exhibit A, pp. 1-3.)  Plaintiff was informed in a written notice that, "[i]f dissatisfied, you have 15 days from the receipt of the response to forward your appeal for third level review."  (Exhibit A, p. 3.)

On July 18, 2005, the Warden at PVSP issued his decision at the second formal level in written memorandum, noting that the "allegations of staff misconduct have been

**REPORT AND RECOMMENDATION - 5**

referred to the Investigative Services Unit (ISU) for investigation," and that while Plaintiff would not be informed of the facts of the investigation, he would be notified of the result. (Exhibit A, p. 4.) The Warden concluded that "your appeal is partially granted at the second level of review, as your allegations have been forwarded to ISU, and an investigation will be initiated." (*Id*.) Plaintiff was advised that "this issue may be submitted for a Director's Level of Review if desired." (*Id*.)

Consistent with the Warden's decision, the 602 form reflects that the appeal was "P. Granted" at the second level. (*Id.*, at 6.) It also includes a "date returned to inmate" of August 11, 2005. (*Id*., at 6.) The ISU completed its investigation on August 23, 2005, finding that Plaintiff's allegations were "partially sustained." (Docket No. 36, Exhibit A, p. 1.) A Bates stamp shows that the ISU's written result, which was in a letter format addressed to Plaintiff, was "received" at PVSP on August 24, 2005. (*Id*.)

Plaintiff alleges, however, that he had been transferred to Mule Creek State Prison ("MCSP") in late June or early July of 2005 and that he did not receive the PVSP Warden's response or the result of the ISU investigation until November 4, when these items were faxed to him at MCSP after an assistant warden promised to look into the matter for him. In support, he has provided records showing that he was in fact at MCSP, and that he went on a hunger strike there because "three appeals he submitted to Pleasant Valley State Prison have not been answered." (Complaint, Exhibit C, p. 10.) He contends that the August 11 date reflects when the 602 form was placed in the institutional mail at PVSP rather than the date that he actually received it. He has also

**REPORT AND RECOMMENDATION - 6**

supplied a copy of a 602 form with a faxed date at the top of November 4, 2005. (Docket No. 36, Exhibit A.) The Court finds Plaintiff's claim as to when he received the second level response to be credible, particularly in the absence of any persuasive contrary evidence from Defendants.[1]

Plaintiff submitted his 602 form to the third level of review at the Inmate Appeals Branch on November 21, 2005. (Motion to Dismiss, Exhibit B, Attachment 1.) Defendants' records show that this appeal was "screened out" on March 1, 2006, though no reason is provided. (Motion to Dismiss, Exhibits A & B.) Plaintiff submitted additional appeals at the third level on March 27, May 8, and May 26. (*Id*.) The March 27 and May 26 appeals were eventually screened out as untimely because Plaintiff failed to "submit the appeal within 15 working days," but the May 8 appeal was screened out for "missing documentation." (*Id*.) Regardless, no appeal has been resolved on its merits at the third level of review.

3.   Analysis

The Court first concludes that Defendants have failed to carry their burden to show that any relief remained available in the state prison system beyond that which was

---

[1] Defendants assert that because Plaintiff apparently appealed to the third level on October 18, 2005, he must have received the second level response before November 4, contrary to his claim. It is true that a notation on a CDCR tracking sheet shows that an appeal was received at the third level on October 18, but that it was "screened out" on December 18 because of "missing documentation [;] only original appeal accept at DL level." (Motion to Dismiss, Exhibit B.) But Defendants have not explained what this notation means. Thus, it is possible that Plaintiff sent paperwork to the third level *before* he received a response at the second level. At any rate, in the absence of more definitive evidence from Defendants, their argument is unconvincing.

**REPORT AND RECOMMENDATION - 7**

provided to Plaintiff at the second level of review.  At that level, Plaintiff's grievance was "partially granted," and the Warden ordered a factual investigation into his allegations of staff misconduct, allegations that were "partially sustained."

In this respect, Plaintiff's case is similar to an inmate's situation in *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).  There, as here, inmate Brown grieved an excessive force claim.  At the second formal level, also like here, Brown was informed that his appeal was partially granted, that the matter had been turned over for an investigation, and that he would be notified of the disposition of his complaint but not about any disciplinary action taken against the officer.  *Id*. at 931.  Brown did not proceed to the third level of review, though he later inquired about the investigation.  *Id*.

On appeal, the Ninth Circuit concluded that Defendants had not proven that some relief remained available to Brown beyond the second level of review.  *Id*. at 940.  This decision was supported by the CDCR's policies and manuals, which required that staff misconduct grievances be investigated only through the specialized staff complaint process, negating any possibility of a parallel investigation through the usual appeals process.  *Id*. at 938.  Accordingly, the Ninth Circuit concluded that no further relief is available to a prisoner once his appeal is partially granted at the second level of review and a confidential investigation into a staff complaint is launched.  *Id*. at 938-39.  In the absence of any proof from Defendants that the rules or policies regarding staff complaints have since changed, that is also the situation in the present case.

It is true that a distinction between Brown's case and Plaintiff's is that Brown was

**REPORT AND RECOMMENDATION - 8**

not informed that he could appeal further while Plaintiff was advised that he could, but this fact does not require a contrary result.  Instead, the dispositive similarity is that Defendants in the present case, as in *Brown*, have not shown that *some* relief was still available at a higher level, given that the matter was characterized as a staff complaint that had been partially granted and investigated at the intermediate level.

In addition, the notifications and instructions given to Plaintiff were muddled. Despite the Warden's advice to Plaintiff that "this issue may be submitted for a Director's Level of Review if desired," he did not specify whether the 15-day deadline to appeal would begin to run from the date of his decision or the date of the completed investigation, and the regulations do not seem to speak to precisely that issue.  *Cf. Brown*, 422 F.3d at 942 (suggesting that an inmate should await the investigation, because "[u]ntil the staff misconduct investigation was completed, the Department had not had a full opportunity to investigate the complaint and to develop an understanding of the facts underlying it").  Nor did the Warden's memorandum define which "issue" or decision could be appealed, a matter that is especially confusing given that the complaint was partially granted and the investigation was partially sustained.  Though California's grievance system may be informal and straightforward in the abstract, *see Woodford v. Ngo*, 548 U.S. 81, 88 (2006), the process was marked with confusion in this particular case.

Even if there remained some possibility of relief at the third level, this Court alternatively concludes that Plaintiff submitted a timely appeal in accordance with the

**REPORT AND RECOMMENDATION - 9**

CDCR's regulations. Pursuant to § 3084.6(c), an inmate must file an appeal to a higher level "within 15 working days of the event or decision being appeal, *or* of receiving an unacceptable lower level appeal decision." *Id*. (Emphasis added.) The Court finds Plaintiff's contention that he did not receive the second level response until November 4, 2005, to be credible, and he filed an appeal within 15 working days of that date, on November 21. Plaintiff notified officials at the third level that he had "just received this 602 citizen complaint back by way of the assistant warden here at this prison Mule Creek due to my voluntarily initiating a hunger strike here at this prison .... because of the lack of response to the second level of this 602 complaint." (Motion to Dismiss, Exhibit A, pp. 10-11.) He further noted that he received the response "at about 2:45 or 3:00 p.m." on "11-4-05." (*Id*. at 11.) It appears that these statements were either overlooked or ignored.

Defendants contend that the November 21 appeal was screened out on March 1, 2006, though they have provided no clear reason for that decision.[2] (Motion to Dismiss, Exhibit B, ¶ 9; Attachment 1, p.2.) In *Ngo*, the Supreme Court held that "proper exhaustion" is required, meaning "compliance with an agency's deadlines and other critical procedural rules." 548 U.S. at 90. Plaintiff complied with the agency's deadlines, giving the agency an opportunity to address his complaint before he filed suit, and its

---

[2] Indeed, even the proposed screened out date of March 1 is called into doubt by other correspondence in the record. It appears that on that date, an "N. Grannis" of the Inmate Appeal Branch notified Plaintiff and the Appeals Coordinator at PVSP that a legible copy of the 602 form was needed, which was thereafter sent and marked as "treat as original." (Motion to Dismiss, Exhibit A, pp. 12-13.) After that, Plaintiff's third level appeals were variously screened out as either not having been filed within 15 working days or because of missing documentation. The record leaves something to be desired in terms of which vague ruling or correspondence from the Inmate Appeals Branch applies to which appeal.

**REPORT AND RECOMMENDATION - 10**

failure to address the merits of a timely appeal rendered any potential remedies unavailable to Plaintiff.  *See*, *e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting").

For these reasons, Defendants have not shown that Plaintiff failed to exhaust all administrative remedies that were available to him.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Dhillon's Joinder in Defendants' Notice of Motion and Motion to Dismiss (Docket No. 37), docketed as a Motion, is GRANTED.  Defendant Dhillon shall be considered as a party to the Motion to Dismiss.

## RECOMMENDATION

Based on the foregoing, the Court hereby RECOMMENDS that Defendants' Motion to Dismiss (Docket No. 20) be DENIED.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1).  The document should be captioned "Objections to Magistrate Judge's Report and Recommendation."  A response to a party's objection may be filed within ten (10) days of receiving the objection.  No replies shall be filed.  The parties are advised that as result of failing to object, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the

Ninth Circuit.



DATED: July 16, 2009

Honorable Mikel H. Williams
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 12**